ALLABY, Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*January 9—February 4; 1930.*

612

For the appellant there were briefs by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *T. W. Brazeau.*

For the respondents there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, attorneys for the Industrial Commission, and *McFarlane & Loomis* of Mauston, attorneys for Rogers, and oral argument by *Mr. Levitan* and *Mr. O. S. Loomis.*

FRITZ, J.  The only question on this appeal is whether there is credible evidence to sustain the commission's finding that at the time of the injury Roy Rogers was an employee of the plaintiff Allaby within the provisions of the compensation act of this state.  A review of the record discloses credible evidence which fairly admits of finding the following facts:  Allaby was the owner of extensive timber lands upon which he was engaged in logging operations to cut timber for veneer logs and for ties.  He employed a number of men, including a foreman, Blackburn, and a camp cook, whom he paid on a time basis.  The men who cut the timber worked in pairs.  In addition to those who

were paid on a time basis, Allaby engaged two pairs to cut timber for compensation which at first was computed at the rate of $1.50 per thousand for veneer logs and ten cents per cut for ties. Allaby engaged Roy Rogers and his brother as the pair mate on that basis, and later increased that rate of compensation when the wages of men working on a time basis were increased. There was no contract or arrangement as to the cutting by Rogers of any designated quantity or portion of timber, or exclusively from any particular part of Allaby's land, or for any definite period. Blackburn was an experienced man in cutting timber, and, as foreman, from day to day told the men, including Rogers, in what part of the forest they were to cut; and, as the work progressed, he selected and marked the trees which were to be cut for veneer. When Rogers began to work, Blackburn showed him how to notch the trees, and then cut them so as to have a squared butt and avoid splitting. No further directions were necessary in view of the simple nature of the work. Roy Rogers had his own saw, but his brother used Allaby's tools, and Roy Rogers sometimes also used Allaby's saw. When he was injured Roy Rogers was cutting timber for ties only, because Blackburn had not marked any trees for veneer that day, but had only directed in what part of the forest Rogers was to cut that day.

Those facts warranted the commission's findings that at the time of his injury Roy Rogers was an employee of Allaby, and that he sustained his injury while performing service growing out of and incidental to that employment. As stated in *Habrich v. Industrial Comm., ante,* p. 248, 227 N. W. 877:

". . . Where the facts disclosed show that one is injured while in the service of another, for the purposes of the compensation act it will be presumed that the person injured was an employee, and that the burden of proving otherwise rests upon the one seeking to defeat compensation."

That presumption was not overcome by the evidence in this matter. True, Allaby and Blackburn did not, in fact, constantly supervise or direct, in detail, the performance of the work by Rogers. However, in view of the simple nature of the work, there was no occasion for detailed directions or constant supervision—after Rogers comprehended and was able to follow Blackburn's initial directions as to notching and cutting so as to leave squared butts and avoid splitting—excepting the daily directions which Blackburn gave as to what part of the forest Rogers was to work in and what trees he was to cut for veneer. In determining whether Rogers was an employee or whether he was an independent contractor, the question is not, necessarily, whether Allaby or Blackburn in fact exercised control of the details of performance by Rogers, but is, rather, whether Allaby had the right to control the details of the work. Allaby certainly had that right, as regards the designation, from time to time, of the place of cutting; the particular trees to be cut; the purpose for which and the length and manner in which they were to be cut; the quantity to be cut; and the continuation or termination of the service. What details of any consequence were there left to the exclusive control of Rogers? There only remained for him to control the extent and time of the application of his muscular power to the reduction of the designated trees to veneer logs or to ties, as Blackburn directed from day to day.

Manifestly, Allaby's right to control all details essential as the work proceeded from day to day was not a mere reservation to control the ultimate result as in the case of *Medford L. Co. v. Industrial Comm.* 197 Wis. 35, 221 N. W. 390. In that case the contractor's service for the lumber company extended to the cutting of all merchantable timber, in accordance with specifications in the contract, from a specified tract, and the delivery thereof at a railroad siding at $6 per thousand. The nature and extent of the service

contracted for was such that it was necessary for the contractor to furnish a number of men, teams, and other equipment. The contract and the contractor's obligations in that case differ so greatly, in their character and scope, from the simple engagement and services of Roy Rogers in the case at bar, that that case, and cases like *Kneeland-McLurg L. Co. v. Industrial Comm.* 196 Wis. 402, 220 N. W. 199, afford no precedent for holding that the relationship between Rogers and Allaby rose to the dignity and independence of an independent contractor. The character of that relationship is not changed, under the circumstances of this case, by the mere fact that Rogers' compensation was computed on the quantity cut at specified rates, which were raised as the wages of other employees were increased. That method of payment did not substantially affect Allaby's control. Similar services and method of payment were incidentally involved in *Komula v. General Acc., F. & L. A. Corp.* 165 Wis. 520, 162 N. W. 919, in which other questions were vigorously contested before the Industrial Commission and in the courts. Nevertheless, compensation for skidding logs, based upon the quantity handled, was not considered to constitute the person performing the service an independent contractor.

For the reasons stated, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.