GREEN VALLEY CO-OPERATIVE DAIRY COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*April 11—May 13, 1947.*

*Alfred E. La France* of Racine, for the appellants.

For the respondents there was a brief by the *Attorney General* and *Mortimer Levitan*, assistant attorney general, and oral argument by *Mr. Levitan*.

FRITZ, J. The injury involved herein was sustained by Karlen on April 29, 1945, in moving a tub of butterfat for the Green Valley Co-operative Dairy Company (hereinafter called "Dairy") in its cheese factory while at work there as a cheese maker and in a managerial capacity in some respects for Dairy since January 1, 1940. Appellants contend there was no competent credible evidence to sustain finding that Karlen was an employee of Dairy; and that the findings do not support the commission's order and award. Appellants claim Karlen was

an independent contractor and not an employee of Dairy. On evidence taken in proceedings before an examiner of the commission he found that Karlen is employed by Dairy as a cheese maker, his pay being based on the per hundredweight of cheese manufactured by him; that Karlen has under his supervision and control the making of the cheese and in such operations hires what help is necessary and pays them out of the amount payable to him by Dairy for the manufacture of the cheese; that Dairy has no voice in the hiring of such help by Karlen and in his fixing of their wage; that the more milk brought to the factory, the more cheese can be made; that aside from the shareholders or patrons of Dairy, other farmers at times bring their milk to the factory and Karlen is at liberty to solicit patrons, but does not hold himself out to make cheese for others than Dairy; that in consequence of Karlen's injury on April 29, 1945, he could not carry on his ordinary duties and was required to hire help for seventeen weeks and two days; and that his net earnings for the work he performed for Dairy was $46.15 per week, and the extra help which he had to have during that period of disability required an expenditure on his part of $360, which entailed a forty-five per cent wage loss for the period of his disability. On the facts thus found by the examiner he ordered Dairy and its insurer to pay compensation to Karlen; and on a petition for review the commission affirmed the examiner's award.

In addition to the facts found by the examiner there was proof, as plaintiffs claim, to the following effect. If the cheese made by Karlen did not come up to the State Brand class, there was deducted from the agreed price per hundredweight to be paid him the difference in the price between the type of cheese he produced and the price of the State Brand cheese; that milk brought to the factory by other farmers than the members of Dairy could be accepted or rejected by Karlen without consulting its officers; and that when he went to the hospital and physicians after the accident, because of his injury he hired

another man and paid him to take his place while he was away, and he was not making as much money then as he made while he was on the job himself, but he was not making less than he paid the man. Furthermore, that Karlen had nothing to do with selling the cheese. His work was completed when it was manufactured, weighed and boxed, and placed in the curing room. Dairy was only interested in getting as much good cheese out of the amount of milk that came into the factory as was possible. It was the business of Karlen to see that the best cheese possible was produced in the minimum time, for by such production he made the most money. As the trial court stated in its decision confirming the award,—

"the evidence . . . presents a border-line case. Viewed from one angle, the evidence and inferences that can be drawn would meet the primary test on which a conclusion could be reached that Karlen was an independent contractor; applying other inferences to the same evidence, the conclusion of the commission that he was an employee could be likewise reached. Coupled with the presumption that arises in favor of the injured person that he is an employee rather than an independent contractor, as stated in *Montello Granite Co. v. Industrial Comm.* 227 Wis. 170, . . . this court cannot say that the commission erred in its conclusion. But, even if the commission erred in that determination and Karlen was an independent contractor, nevertheless, he becomes an employee by virtue of the provisions of subsection 8 of section 102.07 of the statutes. The examiner in his findings referred to this subsection and the commission having adopted his findings, it becomes incorporated in its decision."

The evidence fairly admitted of the findings of fact and inferences drawn therefrom as stated by the examiner and affirmed by the commission. As the facts thus established are virtually undisputed, but may permit of drawing different inferences, there is presented a question of fact and not a question of law (*Tiffany v. Industrial Comm.* 225 Wis. 187, 190, 273 N. W. 519; *Eckhardt v. Industrial Comm.* 242 Wis. 325, 329,

7 N. W. (2d) 841), and consequently the examiner's and commission's findings based on logical inferences from those facts are entitled to the same conclusiveness as findings based on disputed facts. *Scandrett v. Industrial Comm.* 235 Wis. 1, 5, 6, 291 N. W. 845; *Voll v. Industrial Comm.* 239 Wis. 71, 81, 300 N. W. 772; *Tiffany v. Industrial Comm., supra.* When Karlen was injured he was engaged in performing services for Dairy in making cheese for it in its factory with its equipment and the assistance of two other persons who, under his directions and supervision, were likewise performing services for Dairy. Consequently there is applicable to Karlen and Dairy the statement in *Montello Granite Co. v. Industrial Comm.* 227 Wis. 170, 183, 278 N. W. 391, that—

"When a person is injured while performing services for another, a presumption arises in favor of the injured person that he is an employee of the person for whom the service is being performed, and not an independent contractor. That rule casts the burden upon him who seeks to defeat compensation [citing cases]."

That presumption is rebuttable (as stated in *Habrich v. Industrial Comm.* 200 Wis. 248, 254, 227 N. W. 877; *J. Romberger Co. v. Industrial Comm.* 234 Wis. 226, 229, 290 N. W. 639; *Huebner v. Industrial Comm.* 234 Wis. 239, 243, 244, 290 N. W. 145); and there is likewise applicable herein the statement in *Tesch v. Industrial Comm.* 200 Wis. 616, 627, 229 N. W. 194, that—

"In cases where the evidence is evenly balanced and an inference may be drawn one way as easily as another, the scale should be turned in favor of the claimant, principally because it was the intent and purpose of the act to bring border-line cases under it and to close up avenues of escape which would naturally be suggested to those seeking to evade liability under the act." See also *Connor L. & L. Co. v. Industrial Comm.* 203 Wis. 85, 87, 233 N. W. 559.

A very important test for determining whether a person is an employee or an independent contractor is the right to con-

trol the details of his work (*Woodside School Dist. v. Industrial Comm.* 241 Wis. 469, 471, 6 N. W. (2d) 182, and cases cited there). But, as we said in *Employers Mut. L. Ins. Co. v. Industrial Comm.* 230 Wis. 670, 676, 284 N. W. 548,—

"It is quite immaterial whether the right to control is exercised by the master so long as he has the right to exercise such control." See also *Ronning v. Industrial Comm.* 185 Wis. 384, 200 N. W. 652; *C. R. Meyer & Sons Co. v. Grady,* 194 Wis. 615, 217 N. W. 408; *Habrich v. Industrial Comm., supra; Allaby v. Industrial Comm.* 200 Wis. 611, 229 N. W. 193; *Tiffany v. Industrial Comm., supra.*

As in the case at bar there is no direct evidence on the question of who was to have the right to control the details of the work, the determination of that question must be inferred from all of the facts and circumstances of the case. *Montello Granite Co. v. Industrial Comm., supra.* There was no written contract and but very little in the way of any verbal contract between Karlen and Dairy. When he started to work for Dairy on January 1, 1940, he, as he testified, just went in and started to make cheese because they needed a man; he did not know how much he was going to be paid and he did not find out until about a week later when they "just told me they were satisfied with me in a week's time and they would keep me." He told them how much he would work for and they accepted the figure. In addition he was furnished living quarters on the second floor of the factory. There was no agreement as to the time he would stay,—as he testified, "I could quit to-day." Since he was paid according to the amount of cheese produced, it was up to him to provide his own assistants when he needed help, and he did not have to consult anybody with references to getting help, and did the hiring and firing and fixing of their wages. Neither the directors nor the shareholders said anything as to the method of making cheese, when to start making cheese, or when it was finished. In the absence of anything being said, these matters were left apparently to Karlen's discretion in a general managerial capacity, in con-

nection with his work in making cheese for Dairy. As is stated in *Employers Mut. L. Ins. Co. v. Industrial Comm.,* *supra* (p. *677*), "Managers ordinarily are employees with large powers and discretion in conducting a business, but subject to the right of control by the board of directors." There is no proof whatever that Dairy did not have and retain the right to control the details left to Karlen's discretion in the absence of any express arrangement between the parties on the subject. And there apparently was no more occasion for its exercising its right of control than there was in such cases as *Habrich v. Industrial Comm., supra,* in which we held that Bent, who was fatally injured while doing and supervising blasting operations for Habrich, was an employee rather than an independent contractor. Habrich apparently did not exercise the right to control because he did not deem it necessary and felt that Bent knew more about the work than Habrich did and he had confidence in him. That was, evidently, similarly the situation in the case at bar.

Likewise the fact that for Karlen's services for Dairy his compensation was at the rate of specified sums per hundredweight dependent upon the quality and quantity of the cheese produced, and was subject to his paying the assisting workers for their services, does not necessarily render his status that of an independent contractor instead of an employee of Dairy. The arrangement as to Dairy's payments for his services was merely its method of fixing his compensation therefor as was done in *Tiffany v. Industrial Comm., supra.* Although Karlen, in connection with his work in making cheese for Dairy, also served as virtually its manager in the conduct of its operations in the production thereof until it was stored prior to sale by Dairy, without participation therein of Karlen, his activities were apparently and presumably subject to the right of control by Dairy and its officers at all times. So, due consideration of the entire arrangement between the parties warrants the in-

ference that although Dairy did not exercise its right to control the details of the production of cheese, it did have that fundamental right, and, if it had seen fit to exercise such control, Karlen had a choice of either obeying and complying therewith, or of resigning or being discharged by Dairy. When an employer has such right of summary discharge, he obviously has the right to control details of the work. Karlen's remuneration was not determined by the selling price of the cheese, and he did not share in Dairy's profit from its business operations. The method of his remuneration was essentially the same as that used in *Hume v. Industrial Comm.* 248 Wis. 5, 11, 20 N. W. (2d) 573, and in *Nestle's Food Co. v. Industrial Comm.* 205 Wis. 467, 237 N. W. 117, and *Allaby v. Industrial Comm., supra,* in which the injured man was held to be an employee. "The fact that the compensation of a man subject to the general direction of an employer is fixed on the basis of the amount of work done rather than on the amount of time spent, is not controlling." *Komula v. General Accident, F. & L. A. Corp.* 165 Wis. 520, 524, 162 N. W. 919.

In view of the matters and conclusions stated above, it follows that sec. 102.07 (8), Stats., is inapplicable herein; and the trial court's judgment confirming the commission's award must be affirmed.

*By the Court.*—Judgment affirmed.