ACE REFRIGERATION & HEATING COMPANY and another, Appellants, v. INDUSTRIAL COMMISSION and another, Respondents.

*October 3—November 1, 1966.*

For the appellants there were briefs by *Kivett & Kasdorf*, attorneys, and *Clifford C. Kasdorf* of counsel, all of Milwaukee, and oral argument by *Clifford C. Kasdorf*.

For the respondent Industrial Commission the cause was argued by *E. Gordon Young,* assistant attorney gen-

eral, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent Warren J. Klotzbach there was a brief by *Hanley, Wedemeyer, Schapiro & Cavanaugh,* attorneys, and *Nathan Schapiro* of counsel, all of Milwaukee, and oral argument by *Nathan Schapiro.*

HALLOWS, J.   The sole issue on this appeal is whether Klotzbach at the time of his injury was an employee of Ace Refrigeration & Heating Company or an independent contractor. The evidentiary facts are not in material dispute but different ultimate facts and inferences were drawn by the examiner and the commission. The plaintiffs argue the examiner is the only fact finder who heard and saw the witnesses while the commission members relied upon a summary of the evidence, and therefore more weight should be given to the findings of the examiner. This is especially true, it is argued, because Klotzbach suffered a mental illness and there was testimony he had a persecution complex which might affect his testimony and credibility. As we read the transcript of the testimony the credibility of Klotzbach is not really a substantial element, as the facts are not in material dispute. Nor do the plaintiffs raise any question of due process because the hearing officer was reversed and presumably did not participate in the findings of fact by the commission. See *Wright v. Industrial Comm.* (1960), 10 Wis. (2d) 653, 103 N. W. (2d) 531. The difficulty of which the plaintiffs complain is inherent in the fact-finding process and in the use by some administrative agencies of an examiner as the initial step in fact-finding. *Wright v. Industrial Comm., supra; Fitz v. Industrial Comm.* (1960), 10 Wis. (2d) 202, 102 N. W. (2d) 93; *Matayo v. Industrial Comm.* (1958), 5 Wis. (2d) 401, 92 N. W. (2d) 743; *Berg v. Industrial Comm.* (1940), 236 Wis. 172, 294 N. W. 506; *State ex rel. Madison Airport Co. v. Wrabetz* (1939), 231 Wis. 147, 285 N. W. 504.

We recently said in *Indianhead Truck Lines v. Industrial Comm.* (1962), 17 Wis. (2d) 562, 567, 117 N. W. (2d) 679, wherein the commission "reversed" the findings of its examiner, that "[t]he ultimate responsibility for findings is upon the commission itself." Consequently, on review in this court, it is the findings of the commission which are scrutinized to determine if they are supported by credible evidence, and the determination of credibility is left to the administrative process.

Whether a person is an employee or an independent contractor for the purposes of ch. 102, Stats., is a question of law to be determined by the application of well-defined rules to the facts. *Duvick v. Industrial Comm.* (1963), 22 Wis. (2d) 155, 162, 125 N. W. (2d) 356; *Harry Crow & Son, Inc., v. Industrial Comm.* (1963), 18 Wis. (2d) 436, 440, 118 N. W. (2d) 841; *Standard Oil Co. v. Industrial Comm.* (1942), 239 Wis. 457, 460, 1 N. W. (2d) 874.

We stated in *Scholz v. Industrial Comm.* (1954), 267 Wis. 31, 64 N. W. (2d) 204, 65 N. W. (2d) 1, the principal or primary test for determining if an employer-employee relationship exists is whether the alleged employer has a right to control the details of the work. We have also pointed out there are subsidiary and secondary tests which should also be considered, among which are: (1) The direct evidence of the exercise of the right to control; (2) the method of payment of compensation; (3) the furnishing of equipment or tools for the performance of the work; and (4) the right to fire, or terminate the relationship. *Green Valley Co-op. Dairy Co. v. Industrial Comm.* (1947), 250 Wis. 502, 27 N. W. (2d) 454; *Kolman v. Industrial Comm.* (1935), 219 Wis. 139, 262 N. W. 622; *St. Mary's Congregation v. Industrial Comm.* (1953), 265 Wis. 525, 62 N. W. (2d) 19. See 1 Larson, Law of Workmen's Compensation, p. 636, sec. 44.00. These tests are subsidiary in the sense they rest on evidentiary facts and support the primary test.

We have serious doubts whether the finding that Klotzbach was an employee under sec. 102.07 (4), Stats., can be sustained by the evidence, but we are of the opinion that Klotzbach was a statutory employee under subsection (8) of that section. In view of this conclusion it is not necessary to detail all the evidentiary facts but some are necessary to an understanding of our conclusions.

Ace was in the business of selling, installing and servicing heating, refrigerating and air-conditioning equipment. It was desirous of entering the residential-heating field, and in September of 1961, advertised for a salesman who could plan and lay out heating systems and sell such equipment for residential use. In response to this ad, Klotzbach met with the general manager of Ace and represented himself as a heating engineer experienced in the planning and selling of residential-heating systems. He stated he was capable of producing a large volume of residential business, and the present company with which he was associated was not capable of handling all of his work. A written memorandum of part of the discussion was made by the general manager of Ace to the effect the arrangement would be on a commission basis of four percent of gross sales for new installations, seven and one-half percent on air-conditioning systems, and ten percent on furnace-repair work. Klotzbach was to receive a $100-per-week draw against his commissions with a maximum limit at any time of $2,000 over earned and unpaid commissions. He was permitted to use gasoline for his automobile from the company's pump.

Klotzbach's hours of work were not restricted. There was no withholding for federal or state income taxes or social security. Ace reserved the right to accept or reject proposals for installations which Klotzbach might develop. Letters were sent out to contractors by Ace at the request of Klotzbach informing them of this association. Klotzbach used a desk, telephone, and drawing board in the office of Ace. However, he did much of his

work at his home, used his own instruments, kept his own hours, made no reports to Ace and called upon such building contracting prospects as he chose. Prior to the arrangement with Klotzbach, Ace had no contacts with contractors in the residential-building field, but Klotzbach had. Although the control of the designing of heating systems and the method of their installation was solely in Klotzbach, before the proposals were submitted to the prospects they were subject to approval by Ace. If they were acceptable to Ace they were submitted to the prospect and if accepted became a contract between Ace and the purchaser.

From September, 1961, to the time of the accident the following March, approximately 100 proposals were submitted to Ace and 32 were accepted, which constituted a total business of $44,129.75. Ace in its relationship with Klotzbach was interested in the production of acceptable residential business and not with the details of its production.

Considering the four subsidiary tests we find very little, if any, exercise of control by Ace over Klotzbach. Payment on a commission basis is not controlling and in this case it is characteristically neutral on the question of ultimate control. See 1 Larson, Law of Workmen's Compensation, p. 648, sec. 44.33 (b). The furnishing of equipment under these circumstances is not substantial and the right to fire was not even considered or discussed by the parties. On the inconclusive evidence presented we have grave doubts that the finding by the commission that Ace exercised control over the details of Klotzbach's work should be sustained.

However, an independent contractor may be a "statutory employee" if he meets the requirements of sec. 102.07 (8), Stats. Under this section, an independent contractor is eligible for compensation provided: (1) He does not maintain a separate business; (2) does not hold himself out and render services to the public; and (3) is not

himself an employer subject to ch. 102. The examiner found only that Klotzbach sometimes held himself out to and rendered some services for others during the period he was working for Ace. In reversing, the commission found Klotzbach did not maintain a separate business. These findings are not mutually exclusive. Nor does the finding of the commission meet all the requirements of the .section. However, the evidence is undisputed and only one reasonable inference can be drawn therefrom. In such a case the drawing of the inference is a question of law and not a question of fact. *Stommel v. Industrial Comm.* (1962), 15 Wis. (2d) 368, 112 N. W. (2d) 904; *Van Roy v. Industrial Comm.* (1958), 5 Wis. (2d) 416, 92 N. W. (2d) 818.

We may agree with Ace that Klotzbach has the burden and must prove he is not in one of the exceptions in sec. 102.07 (8), Stats. This follows from the proposition that the burden of proving entitlement to workmen's compensation benefits is on the claimant. *Peterson v. Industrial Comm.* (1955), 269 Wis. 44, 68 N. W. (2d) 538; *Van Valin v. Industrial Comm.* (1962), 15 Wis. (2d) 362, 112 N. W. (2d) 920; *Walter v. Industrial Comm.* (1953), 264 Wis. 522, 59 N. W. (2d) 463.

There is no contention that Klotzbach was an employer subject to ch. 102, Stats., and the evidence that Klotzbach maintained a separate business and held himself out to and rendered service to the public is not substantial. We think to qualify as a statutory employee the applicant must prove both he does not maintain a separate business and does not hold himself out and render services to the public, while it is sufficient for disqualification to prove either the maintenance of a separate business or the holding of oneself out to the public. During the period of his relationship with Ace, Klotzbach purchased a furnace from Ace and had it installed in his mother-in-law's house. He arranged for Ace to service some heating systems which had been installed by companies with

which Klotzbach had previously been associated. This work was billed to Klotzbach. Klotzbach also purchased material and labor from Ace for use on jobs not contracted for by Ace.

Klotzbach sold some equipment for a manufacturer with whom Ace did not do business. This sale was made through Ace because the manufacturer dealt only with retailers and Klotzbach received the entire commission. If Klotzbach was an independent contractor maintaining a separate business, it is difficult to understand why it was necessary for this isolated sale to be run through Ace's books.

This evidence of rendering service to the public is *de minimis* and does not constitute a practice or course of conduct of holding oneself out to the public as an independent contractor. Sec. 102.07 (8), Stats., contemplates a separate business, not isolated activity, and further contemplates one's holding himself out to render services. Klotzbach did hold himself out as a heating engineer but these were his qualifications in connection with his obtaining business for Ace, not business for himself.

Certainly the purchase and installation of a furnace for one's mother-in-law would not constitute maintaining a separate business or holding oneself out to render service to the public. Only three sales were made to or on behalf of Klotzbach. These occurred during the month of January and totaled $71.12. During this time Klotzbach brought in business for Ace in the amount of $44,129.75. There is no testimony of what happened to the proposals not accepted by Ace.

On the positive side, Klotzbach testified that during the period he neither worked for anyone else, offered his services to anyone else, nor sold furnaces other than the one to his mother-in-law. We think the evidence substantiates the finding of the commission that Klotzbach did not maintain a separate business and as a matter of law we conclude that he did not hold himself out to and

render services to the public within the meaning of sec. 102.07 (8), Stats. Klotzbach was a statutory employee and the order was properly affirmed by the circuit court.

*By the Court.*—Judgment affirmed.